HOFFMAN *v.* FIDELITY & DEPOSIT COMPANY OF MARYLAND.

1. LIMITATION OF ACTIONS—SUMMARY PROCEEDINGS—APPEAL—CIR-CUIT COURT COMMISSIONER — BOND — LANDLORD AND TENANT — ACTIONS.

    The two-year statute of limitations providing that actions shall not be brought upon any bond given upon appeal from justice's court (3 Comp. Laws, § 9753; 5 How. Stat. [2d Ed.] § 14161), does not apply to a bond filed in proceedings before a circuit court commissioner, upon appeal of the cause to the circuit court.

2. PRINCIPAL AND SURETY—DAMAGES—EVIDENCE—BOND ON APPEAL.

    In an action on an appeal bond covering rent and costs of the defendant tenant, who was evicted in commissioner's court from the rented premises, being a part of an apartment house or flat, where the lease had terminated before the commencement of the summary proceedings, and the tenant had continued to occupy the premises after expiration of his term, evidence of the rental value during the preceding year was material and admissible, but would not control the rental to be recovered by the landlord against the surety on the bond. The outgoing tenant could not force the landlord to accept the rent agreed upon in the lease there being testimony tending to show an increase in the rental value. It was competent to give evidence of the value of the use and occupation during the period subsequent to the termination of the lease.

3. SAME—BOND—DAMAGES OF LANDLORD UPON VACATION.

    Where it was provided in a lease that in addition to the liquidated amount to be paid by the tenant as rent, bills for light and ice should be rendered to and be paid by the tenant, the additional amount unpaid by such tenant could not be recovered upon an appeal bond.

4. LANDLORD AND TENANT—RENT—DEFINITION.

    Rent is in its nature a sum certain; many things may be included in the dealings between landlord and tenant of a purely contractual nature which are not properly rent.

5. SAME—PRINCIPAL AND AGENT—RENT—ACTION ON APPEAL BOND
—DAMAGES.

> Where it 'was claimed by the defendant surety, in an
> action upon an appeal bond given in summary proceed-
> ings, that a sufficient amount had been tendered to cover
> rent and costs, and the jury found that the amount of
> rent due exceeded the sum so tendered, the plaintiffs
> should be required to remit the amount of their judg-
> ment which was in excess of such rent and costs and,
> the remainder exceeding the amount of such tender, it
> should be determined on appeal as the amount of dam-
> ages recoverable: the surety could only be released by
> a tender of a sufficient amount to include all that the
> plaintiffs were entitled to as their damages.

Error to Kent; Perkins, J. Submitted November
9, 1914. (Docket No. 149.) Decided January 29,
1915. Rehearing denied July 23, 1915.

Assumpsit by Clayton H. Hoffman and another
against the Fidelity & Deposit Company of Mary-
land upon a statutory appeal bond. Judgment for
plaintiffs. Defendant brings error. Reduced and
affirmed conditionally.

*Thompson & Temple* (*Frank W. Hine,* of counsel),
for appellant.

*Ambrose C. Hindman,* for appellees.

STONE, J. This is an action of assumpsit upon a
bond given on appeal from a circuit court commis-
sioner in a summary proceeding for possession of cer-
tain premises, to wit, an apartment in the Hoffman
Flats, Grand Rapids.

October 1, 1907, plaintiffs commenced a certain
proceeding before a circuit court commissioner
against one William H. White for the restitution of
the premises, claiming that White was unlawfully
detaining them. White had been a tenant, but his
lease had expired on September 30, 1907. He had

been paying a rental of $500 a year, and, in addition thereto, the ice and light bills, all payable by the tenant to the landlord. A judgment of restitution was rendered against said White by the circuit court commissioner, whereupon White gave the statutory bond on appeal to the circuit court from the said judgment, with the defendant as his surety. Afterwards the cause came on to be tried in the circuit court for the county of Kent, and on April 18, 1908, the said White was found guilty, and a judgment of restitution was entered. The premises were surrendered by White on May 10, 1908. The instant suit was commenced upon the bond on October 27, 1913. Upon the trial it appeared that in the latter part of August, or early in September, 1908, one of the attorneys for said White offered to pay to the plaintiffs, to cover the rent of said premises and the costs of suit, the sum of $415.63. This offer was refused, the plaintiffs claiming the sum of $500.

The bill of particulars filed in the instant case was for the rental value of the premises, $450, and to taxed costs of said suit $38.10, with interest at 5 per cent. from the date of restitution of the premises.

Upon the trial of the case there was evidence tending to show that the same arrangement existed under the last lease of White in regard to ice and lights as had existed under a former lease of another apartment belonging to the plaintiffs, where the arrangement had been stated by the plaintiffs in a letter to said White as follows:

"The ice and light for each month you are to pay for in addition. These bills will be rendered at the end of each month at the same time the statements for rent are rendered. Your gas for fuel will be settled with the gas company direct, but it is to be used in the grate and kitchen range only."

The plaintiff Hoffman, upon the trial of the case,

against the objection and exception of defendant, testified, referring to the tenant, as follows:

"He received ice service, light service, heat and janitor service, and one-half space of the fifth floor. During the years 1907 and 1908 I was acquainted with the rental value of these apartments and these services in the Hoffman Flats.

"*Q.* What was the rental value of these premises occupied by Dr. White, including this service and this space, the rental?

"*A.* From the 1st of October, 1907, until he vacated the same in May, after the determination of this suit in the circuit court was $450."

Another witness testified, under like objection and exception, as follows:

"*Q.* What would you say was the rental value of the south apartment on the fifth floor of the Hoffman Building from the first of October, 1907, to the 10th of May, 1908, including heat, light, janitor service, ice and elevator service?   *   *   *

"*A.* That would be for a period of seven months and ten days from the 1st of October to the 10th of May; is that the question?

"*Q.* He moved out on the 10th of May; that is, at the end of the litigation under the landlord and tenant act.

"*A.* That is seven months and ten days, then?

"*Q.* That would be the exact time.

"*A.* I should say $420."

In its charge to the jury the court, among other things, said:

"The plaintiffs claim that the rental value of these premises during the time that Dr. White was occupying them—namely, from October 1, 1907, to May 10, 1908—was $50 a month, and, in addition thereto, the charges during that time for ice and light furnished the tenant. The plaintiffs claim that those charges amounted to about $6 a month, or for from $40 to $50 for the entire period of nearly eight months. To this amount the plaintiffs claim should be added the costs taxed in the case against Dr. White, which terminated

in their favor in this court, those costs being $38.10.
* * * In fixing the rental value, therefore, the
fact that these services of light and ice were rendered
to make the occupancy of the premises more accept-
able and convenient may be considered by you as
bearing upon the question of the actual value, rental
value, of these premises during this period. And I
think, too, I might as well state that, if the only agree-
ment between the parties as to the amount that should
be paid for the privilege of occupying these premises
was the amount to be paid for ice and light, that would
constitute the amount to be recovered if it should ap-
pear that the ice and light were furnished. In other
words, it is a matter of agreement between the par-
ties as to what shall be paid for the privilege of occu-
pying the premises such as these, or any other prem-
ises for that matter, and whatever they agree to pay,
or whatever condition may be attached to the privi-
lege of occupancy, that amount will be under the law
rent. So I say to you, gentlemen, that under the un-
disputed facts in this case also and the lease which
has been read to you, or the agreement constituting
the lease which has been read to you by counsel on
both sides relating to this subject of light and ice,
the ice and light were to be paid for as furnished as
a condition or one of the conditions of the occupancy
of these premises, as well as the sum specified as the
annual rental. Both therefore, under the law, are to
be considered in determining the rental value of the
premises, if you should find that the ice and light
were actually furnished.

"The plaintiffs further claim that during the
months that Dr. White, the tenant, occupied these
premises—namely, from October 1, 1907, to May 10,
1908—the winter months, the premises were worth
more than they would ordinarily have been worth on
a yearly rental. That is a subject for your consid-
eration. If they were worth more during those winter
months, it is a matter for you to determine. If they
are not worth more, it is up to you as the jurors in
the case to determine what the rental value actually
was worth.

"The defendant, on the other hand, denies that they
are worth any more than the annual rental value
would indicate, namely, $41.66, and a fraction a

month. The plaintiffs claim that they are worth $50 a month during those months. What is the fact?

"Now, after you have determined the amount due, and you will reckon that amount from the 1st day of October, 1907, up to and including the 10th of May, 1908, at whatever monthly rental you find the premises were actually worth under the evidence in this case, adding thereto whatever sum you may find under the evidence the ice and light were actually worth furnished Dr. White during this period of his occupancy, adding thereto the $38.10 costs; the sum total of these three items will determine.

"Now, if you should find that the amount offered by Mr. Hine to Mr. Hindman in August or September, 1908, was equal to that amount or more than that amount, your verdict must be for the defendant; and that is for this reason, gentlemen: The defendant here is a surety, and if the plaintiffs had been offered at any time an amount which would equal the liability of the surety, and had refused to accept it, in the law that would be a release of the surety, because the liability of the surety is a secondary liability in the law, and, if all the plaintiffs were entitled to claim at the time that offer was made was $415.63, the offer and its refusal would constitute in the law a release of the defendant from further liability under this bond.

"But, on the other hand, if the amount which the plaintiffs were entitled to recover for rent, as I have indicated, and the costs in that proceeding, as I have indicated, if the amount that they were entitled to recover was more than, even one cent more than the $415.63 which it is claimed was offered, then the plaintiffs are entitled to recover the full amount due against the defendant surety company, together with interest at 5 per cent. from the time they obtained possession of these premises, May 10, 1908, to date."

The trial resulted in a verdict and judgment for the plaintiffs for $567.54, damages and costs.

The defendant has brought the case here upon writ of error, and there is a large number of assignments of error. Counsel for defendant say, in their brief, that there are six principal questions raised by the assignments of error:

(1) Statute of limitations.
(2) Can recovery be had in this action for rental value under the bond sued on?
(3) Can recovery be had in this action for light and ice bills?
(4) Did the court err in submitting the case to the jury on the theory of tender?
(5) Estoppel.
(6) Interest.

1. The defendant gave notice under the general issue of the statute of limitations. In support of this point it relies upon the provisions of section 9753 of the Compiled Laws of 1897 (5 How. Stat. [2d Ed.] § 14161). This is an act of the legislature entitled:

"An act to limit the liability of sureties on bonds given on appeal from justice courts."

It provides as follows:

"That no action shall hereafter be brought to charge any surety or sureties on any bond or recognizance given on appeal from any justice court in this State, unless the same shall be brought within two years from the date of the final determination of the suit in which such bond is filed."

In the same connection counsel for appellant call attention to section 11176 of 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13696), relating to the bond on appeal to the circuit court in summary proceedings. This statute provides that:

"Either party conceiving himself aggrieved by the determination or judgment of the commissioner, or judge, or other officer, made or rendered under the provisions of this chapter, may appeal therefrom to the circuit court for the same county, within the same time, in the same manner, and return may be compelled, and the same proceedings shall be thereon had, as near as may be, and with the like effect, as in cases of appeals from judgments rendered before justices of the peace, and costs shall be awarded and collected in the circuit court in the same manner."

It is the contention of the defendant that this statute of limitations applies to bonds given on appeal in summary proceedings, and therefore to the bond in this case, and that the plaintiffs were not entitled to bring this action, as the two-year limitation had long since expired at the time this action was commenced. We cannot agree with the defendant in this contention. The so-called statute of limitations does not apply, in our judgment, to an appeal bond given on an appeal in a summary proceeding. We have examined with great care the decisions of this court cited by counsel upon this subject. While appeals from these proceedings are allowable in the same manner as on judgments rendered by justices of the peace, the proceedings are not bound by any of the provisions of the justice's act, except so far as this chapter may have adopted certain proceedings of the former so as to make them substantially a part of the latter. *Dibell* v. *People,* 22 Mich. 371; *Fowler* v. *Bredin,* 98 Mich. 133 (56 N. W. 1110).

In *Bauer* v. *Wasson,* 66 Mich. 256 (33 N. W. 186), it was held that a statute making the continuance of the liability of a surety on a bond given on appeal from a justice's judgment depend upon the issuance of an execution within 30 days after rendition of judgment against the principal in the circuit court did not apply to appeals from the decisions of justices in forcible entry and detainer cases, but was confined to cases arising under the justice's act. By a like reasoning it must be held that the circuit judge did not err in holding that the statute of limitations invoked did not apply to an action brought on a bond given in a summary proceeding.

2. Can recovery be had in this action for rental value under the bond sued on? It should be borne in mind that the lease to White had terminated. Its provisions were therefore at an end. While evidence

of what property had rented for in the past year, and what it had in a given case been rented for during the incoming year might have some bearing upon the rental value, we think it very clear that the rental paid under the old lease would not be controlling. If the rent paid under the old lease were controlling in amount, then an outgoing tenant, by giving the statutory bond on appeal, could force the landlord to accept the old rental, notwithstanding the fact that the rental value of the premises might be double the rent named in the old lease. Undoubtedly, where the proceeding against the tenant is instituted because of the nonpayment of rent, and it becomes the duty of the magistrate to find the amount of rent due, the terms of the lease covering the period would be controlling. We think it was competent to give evidence of the rental value, and to submit that question to the jury. We are aware that the terms "rent" and "rental value" are often used synonymously by the courts. It becomes the duty of the officer taking the bond to fix the amount of the penalty, and the same shall not be less than twice the amount of the annual rent of the premises in dispute. This may or may not be governed by a lease, depending upon whether a lease is then in force. *Cummerford* v. *Paulus,* 66 Mich. 648 (33 N. W. 741) ; *Schellenberg* v. *Frank,* 139 Mich. 183 (102 N. W. 644).

In the case last cited the record shows that there had been an expiration of the tenancy, and evidence was given showing the rental value of the premises up to the time of restitution. Counsel for defendant is mistaken when he says that the record in that case discloses that the suit was brought for the stipulated rent only, and not for the rental value. The stipulated rent was $60 a month, and rental value was claimed to be $70 per month. It is true that the old lease was put in evidence, as well as a new lease, as

tending to show the rental value of the premises, and that such course was proper we have already stated.

3. Can recovery be had in this action on the bond for light and ice bills paid by plaintiffs? After an examination of the authorities bearing upon this subject, we are constrained to answer this question in the negative. It should be noted that this is an action against the surety, in which, by the terms of the bond, the payment of rent and costs is secured, and not damages generally. The undisputed evidence in the case shows that the light and ice bills, during the period covered, amounted to between $40 and $50. The conditions of the bond in a suit against the surety should be construed with reasonable strictness. Things that are agreed to be done as between landlord and tenant may be recovered for in a proper suit, but are not necessarily included in the bond. Payments which are not properly rent should not be included in this action. One of the essential definitions of rent is that it is for a certain sum. Taylor's Landlord and Tenant (9th Ed.), § 369. Many things may be included in dealings between landlord and tenant which are purely contractual, and are not rent proper. The latter and costs are all that the surety is liable for in this case. Tiffany, Landlord and Tenant, § 169 *et seq.* We do not think that the claim for light and ice bills should have been included in the plaintiffs' recovery, and the court erred in submitting that claim to the jury.

4. Did the court err in submitting the case to the jury on the theory of tender? It is very clear to us that there was no error in the charge upon that subject of which the appellant can complain. Whether the tender of a sufficient sum to cover the amount of the plaintiffs' claim would release the surety is a question which we need not consider, for the court in-

structed the jury unqualifiedly that, if they found the tender of a sufficient sum was made, there could be no recovery. Manifestly, the jury found the amount tendered too small to cover what they found was then due the plaintiffs for the actual time occupied down to date of surrender of the premises.

We find no error committed by the court under the fifth and sixth grounds stated by appellant. We think, however, the judgment was too large by $50 and the interest thereon at 5 per cent. from May 10, 1908. The largest amount shown by the evidence for light and ice bills was $50. The amount claimed for rent in the bill of particulars was $450. The recovery, therefore, could not exceed that sum for rent. There was evidence tending to show that the rental value, including light and ice, might reach that sum. Deducting $50 from $450, and adding the costs of $38.10, would make a sum of $438.10, without including any interest, which exceeded the amount of the tender. It therefore is evident that the so-called tender was not large enough to cover the rental proper, and costs and interest due.

If the plaintiffs shall, within 30 days, remit the sum of $65 (being the amount of $50, plus interest thereon) from the judgment in this case, so that the same may stand at the sum of $502.54, the judgment will be affirmed for that amount; otherwise the judgment will be reversed, and a new trial granted. In either event the appellant will recover its costs to be taxed.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.